1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

EMILY GIBSON,

           Plaintiff,

    v.

AL JAZEERA INTERNATIONAL (USA) LLC,

           Defendant.

Case No. 22-cv-04153-LB

**ORDER GRANTING MOTION TO DISMISS IN PART**

Re: ECF No. 9

## INTRODUCTION

The plaintiff in this employment-discrimination action alleges that her former employer, the news outlet Al Jazeera International, discriminated against her because she is a woman.[1] The plaintiff contends that the defendant paid her less than male employees, tolerated harassment by male employees, placed her in an "acting" position to avoid providing fair pay and credit, and then retaliated by retracting a promotion after she raised these issues internally.[2] The plaintiff ultimately resigned.[3] The defendant moved to dismiss some of the claims: the fraud claims, the claim for intentional infliction of emotional distress (IIED), and the claim for constructive

---

[1] Compl. – ECF No. 1-2. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 5–20 (¶¶ 10–20, 25–49, 54–103).

[3] *Id.* at 21, 23–32 (¶¶ 104, 121–210).

1    wrongful discharge.[4] The court dismisses, with leave to amend, the fraud claims, which were

2    asserted under California Civil Code § 1710, because the plaintiff's allegations do not satisfy the

3    heightened pleading standards under Rule 9(b). The court also dismisses, with leave to amend, the

4    claim for IIED because the allegations describing the distress the plaintiff experienced, which

5    mainly arose from personnel decisions, are insufficient to state an IIED claim.

6         But the plaintiff's constructive wrongful-discharge claim survives. The plaintiff based that

7    claim on more than the defendant's failure to promote her. Instead, she alleged that the defendant

8    required her to perform more work than it paid or credited her and then forced her to remain silent

9    about the situation. These allegations are sufficient for a constructive-discharge claim.

10

11                                        **STATEMENT**

12        The plaintiff started working as a contract video producer for the defendant in 2015.[5] She

13   immediately and repeatedly experienced gender discrimination, including unequal pay, until she

14   resigned in 2020.[6] The defendant initially paid her $23 an hour, while it paid a male colleague —

15   who started the same day as her with nearly identical experience — $35 an hour.[7] And, when the

16   defendant promoted her in 2016 to a full-time role as a producer, it paid her less than her male

17   counterparts.[8] The plaintiff and other female producers were routinely responsible for a

18   disproportionate workload compared to male producers.[9] For example, the plaintiff frequently

19   worked as an "acting" senior producer and had senior producer responsibilities without

20   correspondingly higher pay.[10]

21

22

23   ───────────────

24   [4] Mot. – ECF No. 9-1.

     [5] Compl. – ECF No. 1-2 at 5 (¶ 8).

25   [6] Id. at 5–21 (¶¶ 10–106).

26   [7] Id. at 5–6 (¶¶ 10–12).

     [8] Id. at 7 (¶ 20).

27   [9] Id. at 14–15 (¶ 70).

28   [10] Id. at 12, 14–15, 17 (¶¶ 54–55, 70, 85).

United States District Court
Northern District of California

Aside from pay disparities, the plaintiff cites instances where a male coworker "yelled" at her and other women, expressed hatred against women, viewed pornography at work, and discussed his familiarity with guns.[11] When female employees brought formal complaints concerning the coworker, the company dismissed their concerns without serious investigation.[12]

The plaintiff raised these issues internally. In addition to lodging complaints, she participated in the defendant's Gender Working Group, a committee formed in 2019 to "discuss women's concerns" at the company.[13] While the complaint is silent as to who formed the group and whether the defendant sanctioned it, the plaintiff participated in meetings and responded to multiple surveys.[14] The defendant's management, including the "Head of [Al Jazeera International] English," Moeed Ahmad, received notes about the meetings and the results of the surveys.[15]

Despite the alleged discrimination, the plaintiff was among the highest-performing producers at the company. She won numerous industry awards, as did projects she worked on.[16] For her work in 2019, management rated her as "Distinguished," the highest performance rating at the company.[17] Recognizing these accomplishments, an executive producer told the plaintiff in October 2019 that the executive wanted to promote her to senior producer, which came with increased compensation and managerial responsibility.[18] Soon after, she began performing duties as a senior producer on two separate shows.[19] She was added to an internal-messaging group reserved for managers, and the company arranged for her to receive management training in Washington, D.C., in January 2020.[20]

---

[11] *Id.* at 8–9 (¶¶ 26–33).

[12] *Id.* at 9–10 (¶¶ 34–42).

[13] *Id.* at 12–13 (¶¶ 52–53, 56–59).

[14] *Id.* at 12 (¶¶ 52–53).

[15] *Id.* at 12–13 (¶¶ 53, 56).

[16] *Id.* at 11, 13, 16 (¶¶ 50–51, 61, 80).

[17] *Id.* at 14 (¶ 64).

[18] *Id.* at 12–14, 17 (¶¶ 54–55, 62–63, 66–68).

[19] *Id.* at 14–15 (¶¶ 66, 72).

[20] *Id.* at 13–14 (¶¶ 62, 65, 67–68).

United States District Court
Northern District of California

The plaintiff completed the management training on January 21.[21] While at the training, she heard "many complaints" from women about unequal pay, and she shared her own experiences of gender discrimination with other employees.[22] She also met with a higher-level manager to discuss the Gender Working Group and share her experiences.[23] A week later, on January 28, Mr. Ahmad reached out directly to the plaintiff to request "additional information" about her promotion. The plaintiff "immediately saw this as a red flag" because her supervisors had told her the promotion had already been approved by management.[24] On February 26, an executive producer informed the plaintiff that "Mr. Ahmad no longer believed" that she was "qualified for the promotion." The defendant did not further explain the decision.[25] At this point, the plaintiff had worked at Al Jazeera for over four years, longer than any other full-time producer at the company.[26]

The plaintiff alleges that Mr. Ahmad's retraction of her promotion was retaliation for her advocacy and for the discussions she had with other employees during the management training.[27] When she raised her concerns with her supervisor, she got the "sense" that she would never be promoted because of her gender and outspokenness.[28] The complaint also alleges that, hours before a Gender Working Group meeting on April 7, the plaintiff "was told . . . that Mr. Ahmad did not want" her to speak with other employees about her experiences with gender discrimination at Al Jazeera.[29]

Meanwhile, despite the revocation of her promotion, the plaintiff's assignments did not change. The defendant still asked her to do the work of a senior producer for two separate shows,

---

[21] *Id.* at 14 (¶ 69).

[22] *Id.* at 15 (¶ 71).

[23] *Id.* at 14–15 (¶ 70).

[24] *Id.* at 15–16 (¶ 74).

[25] *Id.* at 16 (¶ 79).

[26] *Id.* (¶ 80).

[27] *Id.* at 17 (¶ 81).

[28] *Id.* at 18 (¶ 87).

[29] *Id.* at 19 (¶¶ 93–94).

which she considered an unsustainable "double workload."[30] The defendant's managers, however, were "careful" not to refer to her as a senior producer and instead referred to her as a "team lead."[31] The plaintiff alleges she felt an "enormous amount of stress, anxiety, loss of sleep, as well as financial concerns" because "she did not receive the promised promotion and increased compensation."[32] On May 6, 2020, an executive producer told the plaintiff that she would generally only receive credit based on her official title (meaning she would not receive senior-producer credit irrespective of her work).[33] On May 7 or 8, 2020, she informed HR and the executive producer that she would resign at the end of that month. She resigned the next day.[34]

The plaintiff's state-court complaint, which the defendant removed to this court, has the following claims: (1) gender discrimination (Cal. Gov't Code § 12940(a)); (2) hostile work environment (Cal. Gov't Code §§ 12923, 12940(j)); (3) equal-pay violations (Cal. Lab. Code § 1197.5); (4) retaliation for reporting discrimination (Cal. Gov't Code § 12940(h)); (5) retaliation for reporting equal-pay violations (Cal. Gov't Code § 12940(h), Cal. Lab. Code § 1197.5); (6) breach of the duty to investigate (Cal. Gov't Code § 12940(k)); (7) negligent misrepresentation (Cal. Civ. Code § 1710(2)); (8) fraudulent misrepresentation (Cal. Civ. Code § 1710(1)); (9) false promise (Cal. Civ. Code § 1710(4)); (10) intentional infliction of emotional distress; (11) constructive wrongful termination; and (12) unfair business practices (Cal. Bus. & Prof. Code § 17200).[35] The defendant moved to dismiss claims seven through eleven (the fraud claims, the claim for intentional infliction of emotional distress, and the claim for constructive wrongful discharge) under Rule 12(b)(6).[36] All parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[37] The court held a hearing on October 20, 2022.

---

[30] *Id.* at 19–20 (¶¶ 97–98).

[31] *Id.* at 17 (¶ 85).

[32] *Id.* at 18 (¶ 88).

[33] *Id.* at 20 (¶ 100).

[34] *Id.* at 21 (¶ 104).

[35] *Id.* at 23–32 (¶¶ 121–210).

[36] Mot. – ECF No. 9-1.

[37] Joint Stipulation – ECF No. 29 at 2.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STANDARD OF REVIEW**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of (1) what the claims are and (2) the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, "[a] complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain sufficient factual allegations, which when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *NorthBay Healthcare Grp., Inc. v. Kaiser Found. Health Plan, Inc.*, 838 F. App'x 231, 234 (9th Cir. 2020). "[O]nly the *claim* needs to be plausible, and not the facts themselves . . . ." *NorthBay*, 838 F. App'x at 234 (citing *Iqbal*, 556 U.S. at 696); *see Interpipe Contracting, Inc. v. Becerra*, 898 F.3d 879, 886–87 (9th Cir. 2018) (the court must accept the factual allegations in the complaint "as true and construe them in the light most favorable to the plaintiff") (cleaned up).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (cleaned up).

If a court dismisses a complaint because of insufficient factual allegations, it should give leave to amend unless "the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). If a court dismisses a complaint because its legal theory is not cognizable, the court should give leave to

1    amend if the plaintiff could "articulate a cognizable legal theory if given the opportunity." *Steele-*

2    *Klein v. Int'l Bhd. of Teamsters, Loc. 117*, 696 F. App'x 200, 202 (9th. Cir. 2017).

3

4                            **ANALYSIS**

5    **1.  Constructive-Discharge Claim**

6        To maintain a constructive-discharge claim, a plaintiff must plead enough facts to plausibly

7    show "that the employer either intentionally created or knowingly permitted working conditions

8    that were so intolerable or aggravated at the time of the employee's resignation that a reasonable

9    employer would realize that a reasonable person in the employee's position would be compelled to

10    resign." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1251 (1994). Elaborating on this

11    standard, the California Supreme Court has explained that:

> Actual discharge carries significant legal consequences for employers, including possible liability for wrongful discharge. In an attempt to avoid liability, an employer may refrain from actually firing an employee, preferring instead to engage in conduct causing him or her to quit. The doctrine of constructive discharge addresses such employer-attempted "end runs" around wrongful discharge and other claims requiring employer-initiated terminations of employment.

17    *Id.* at 1244. But "the mere failure to promote the plaintiff, even if unlawfully discriminatory, will

18    not support a finding of constructive discharge." *Id.* at 1247 n.4. And "a poor performance rating

19    or a demotion, even when accompanied by reduction in pay, does not by itself trigger a

20    constructive discharge." *Id.* at 1247. "The essence of the test" for intolerability "is whether,

21    under all the circumstances, the working conditions are so unusually adverse that a reasonable

22    employee in [the] plaintiff's position would have felt compelled to resign." *Id.*; *see also Brooks*

23    *v. City of San Mateo*, 229 F.3d 917, 930 (9th Cir. 2000) ("[C]onstructive discharge occurs when

24    the working conditions deteriorate, as a result of discrimination, to the point that they become

25    'sufficiently extraordinary and egregious to overcome the normal motivation of a competent,

26    diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or

27    her employer.'") (quoting *Turner*, 7 Cal. 4th at 1246).

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

For example, in *Kannan v. Apple Inc.*, the court held that the defendant's failure to promote an employee or increase his compensation over his term of employment did not equate to intolerable working conditions and granted summary judgment to the employer defendant on a constructive-discharge claim. No. 5:17-cv-07305-EJD, 2020 WL 6135994, at *8 (N.D. Cal. Oct. 19, 2020), *aff'd*, No. 20-17211, 2022 WL 3973918 (9th Cir. Aug. 31, 2022). On the other hand, in *U.S. E.E.O.C. v. Univ. Coll. of Chapman Univ.*, the court allowed a constructive-discharge claim to proceed beyond a motion to dismiss where the plaintiff alleged that the defendant subjected him to humiliating treatment and assigned him "burdensome additional duties that no other employee . . . had to complete." No. C 11-04845 LB, 2012 WL 1831523, at *4 (N.D. Cal. May 18, 2012) (cleaned up).

Here, the plaintiff asserts that the retaliatory revocation of her promotion and the denial of credit as senior producer effectively compelled her to resign.[38] Accepting the plaintiff's allegations as true, the defendant did not merely fail to promote the plaintiff. Instead, the defendant told her she would be promoted in October 2019, gave her job responsibilities commensurate with that promotion, and provided management training.[39] Then months later — in late February 2020 — it retracted her promotion.[40] And, even then, the defendant asked the plaintiff to undertake the same management responsibilities without corresponding credit or increase in pay.[41]

Concerning the intolerability requirement, the plaintiff's allegations are sufficient. In addition to discrimination and retaliation, she alleges that she did the work of a senior producer without credit, proper pay, or possibility of advancement. She also alleges that management expressly told her to keep silent about her experiences.[42] Thus, "under all the circumstances," the plaintiff reasonably understood her options were to either resign or be taken advantage of. *Turner*, 7 Cal.

---

[38] Opp'n – ECF No. 21 at 20–22.

[39] Compl. – ECF No. 1-2 at 12–15 (¶¶ 54–73).

[40] *Id.* at 16–17 (¶¶ 79, 81).

[41] *Id.* at 17, 19–20 (¶¶ 85, 97–98).

[42] *Id.* at 19 (¶ 94).

4th at 1247. This is just the sort of "end run[]" around actual discharge that the constructive discharge doctrine forbids. *Id.* at 1244.

In sum, the plaintiff has alleged sufficient facts to survive a motion to dismiss. The court denies the defendant's motion to dismiss this claim.

### 2.   Intentional Infliction of Emotional Distress Claim

The defendant contends that the plaintiff did not plead facts that support the outrageous conduct required for a cognizable intentional-infliction-of-emotional-distress claim.[43] She did not.

The elements of the claim are: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Lawler v. Montblanc N. Am., LLC*, 704 F.3d 1235, 1245 (9th Cir. 2013) (quoting *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009)). "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.'" *Id.* (quoting *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1001 (1993))

In the employment context, a special standard applies: "an employer's intentional misconduct in connection with actions that are a normal part of the employment relationship . . . resulting in emotional injury is considered to be encompassed within the worker's compensation bargain, even if the misconduct could be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.'" *Bayne v. Bowles Hall Found.*, No. 21-cv-01959-JCS, 2021 WL 3426921, at *15 (N.D. Cal. Aug. 5, 2021) (quoting *Yau v. Santa Margarita Ford, Inc.*, 229 Cal. App. 4th 144, 162 (2014)) (cleaned up). In this respect, "[n]ormal conduct within an employment relationship includes workplace discipline, termination, demotion, promotion, criticisms, and frictions in negotiations as to grievance." *Id.*

---

[43] Mot. – ECF No. 9-1 at 13.

1       For example, in *Semore v. Pool*, the court held that the alleged wrongful acts — firing an

2   employee for failing to consent to a pupillary reaction eye test for drug use — "were clearly a

3   normal part of the work relationship, and the exclusive remedy provisions of the workers'

4   compensation law apply." Cal. App. 3d 1087, 1104 (Ct. App. 1990). In short, personnel-

5   management activity "is insufficient to support a claim of intentional infliction of emotional

6   distress, even if improper motivation is alleged." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55,

7   80 (1996); *see also Mohammed v. Am. Airlines, Inc.*, No. C 19-01946 WHA, 2019 WL 3577160, at

8   *3 (N.D. Cal. Aug. 6, 2019) (same).

9       Regarding the second element (suffering severe or extreme emotional distress), boilerplate

10  allegations are insufficient. *See, e.g.*, *Moralez v. Whole Foods Mkt. Cal., Inc.*, No. 14-cv-05022-

11  EMC, 2015 WL 8292079, at *6 (N.D. Cal. Dec. 9, 2015) (allegations that the plaintiff was

12  "scared, humiliated and horrified" were insufficient) (cleaned up); *Hughes*, 46 Cal. 4th at 1040,

13  1051 (allegations recounting sexually explicit "inappropriate comments" and "suffer[ing]

14  discomfort, worry, anxiety, upset stomach, concern, and agitation" were insufficient). For

15  example, in *Maynard v. United Servs. Auto. Ass'n Fed. Sav. Bank*, the court held that allegations

16  that the plaintiff suffered "panic attacks and migraines, feeling helpless and powerless,

17  humiliation, suffering from tachycardic episodes, severe increase in stress and metanephrines,

18  anxiety, multiple visits to the ER, and addition of new anxiety relieving prescriptions" were

19  insufficient. No. 21-cv-04519-JSW, 2022 WL 4126272, at *5 (N.D. Cal. Sept. 9, 2022) (cleaned

20  up) (order denying motion for reconsideration).

21      Cases where plaintiffs have successfully pleaded severe emotional distress typically involved

22  continued distress. *Grier v. Cnty. of San Bernardino*, No. EDCV 19-00415 JGB (SHKx), 2019

23  WL 4138009, at *5 (C.D. Cal. May 22, 2019) (the plaintiff alleged severe emotional distress based

24  on allegations that he "continue[d] to suffer from headaches, loss of taste, and other symptoms

25  related to head trauma and emotional distress"); *Hughes*, 46 Cal. 4th at 1051 ("Severe emotional

26  distress means emotional distress of such *substantial quality or enduring quality* that no

27  reasonable person in civilized society should be expected to endure it.") (emphasis added).

28      Under these standards, the plaintiff's allegations are insufficient.

United States District Court
Northern District of California

First, the plaintiff has not sufficiently pleaded that she suffered "severe or extreme" emotional distress. Her allegation — that she felt an "enormous amount of stress, anxiety, loss of sleep, as well as financial concerns" because "she did not receive the promised promotion and increased compensation" — is a boilerplate allegation that is insufficient to maintain an intentional-infliction-of-emotional-distress claim.[44] *See, e.g.*, *Hughes*, 46 Cal. 4th at 1051 (the "plaintiff's assertions that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation as the result of defendant's comments" were insufficient) (cleaned up); *Moralez*, 2015 WL 8292079, at *6 (allegations that the plaintiff was "scared, humiliated, and horrified," and that she "immediately panicked and was virtually paralyzed with fear," were in sufficient). The plaintiff's allegation — that she suffered "severe emotional distress with physical manifestations including but not limited to suffering, anguish, anxiety, worry, shock, insomnia, headaches and humiliation" — also is not meaningfully different from allegations that were held to be insufficient in other cases.[45] *See Maynard*, 2022 WL 4126272, at *5.

Second, the plaintiff's intentional-infliction-of-emotional-distress claim is based on conduct that qualifies as personnel management. For instance, even if the defendant's decision to revoke the promised promotion and withhold the increased compensation were discriminatory, that does not establish an intentional-infliction-of-emotional-distress claim as a matter of law. *Janken*, 46 Cal. App. 4th at 80. The plaintiff's reliance on *Alcorn v. Anbro Eng'g, Inc.*, 2 Cal. 3d 493 (1970), is not persuasive.[46] The facts in *Alcorn* are meaningfully different from the facts in this case. There, the defendant's allegedly outrageous conduct went beyond personnel-management decisions and included blatantly abhorrent racist verbal attacks. *Id.* at 496–97. There are no comparable allegations here.

Although the plaintiff cites a "campaign of retaliation," she has not alleged specific instances of extreme and outrageous conduct, such as yelling, humiliating treatment in front of peers, or

---

[44] Compl. – ECF No. 1-2 at 18 (¶ 88).

[45] *Id.* at 31 (¶ 197).

[46] Opp'n – ECF No. 21 at 19.

racially or sexually offensive language.[47] *Cf. Semore v. Pool*, 217 Cal. App. 3d 1087, 1104 (1990) (causes of action for emotional distress were properly dismissed where "[n]o program of supervisorial harassment [was] alleged" and the "plaintiff ha[d] not alleged . . . conduct that exceeds all bounds usually tolerated by a decent society"). For example, in *Faurie v. Berkeley Unified Sch. Dist.*, the court found that the plaintiff had adequately alleged an intentional-infliction-of-emotional-distress claim based on an "ongoing course of humiliation and harassment" that went beyond conduct that could be described as "personnel management activity." No. C 08-0060 TEH, 2008 WL 820682, at *10–12 (N.D. Cal. Mar. 26, 2008). In that case, the plaintiff alleged that superiors yelled at him, became enraged, threw documents, told him he had an "attitude problem" in front of other employees, and interrupted medical rest periods. *Id.* at *11. The plaintiff's allegations as currently pleaded fall short of this standard because the "campaign of retaliation" is not supported by references to yelling, publicly humiliating treatment, or racially or sexually offensive language.

Accordingly, the plaintiff's allegations do not plead a plausible claim for intentional infliction of emotional distress. The court dismisses this claim without prejudice.

### 3. Fraud Claims

The plaintiff asserted three claims under California Civil Code § 1710: false promise, negligent misrepresentation, and fraudulent misrepresentation. Claims that "sound in fraud" or are "grounded in fraud" must satisfy the heightened pleading requirements in Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). The plaintiff's claims under § 1710 sound in fraud and must be pleaded with particularity under Rule 9(b). *Mewawalla v. Middleman*, No. 21-cv-09700-EMC, 2022 WL 1304474, at *12 (N.D. Cal. May 2, 2022) (applying Rule 9(b)'s heightened-pleading standard to false-promise claim); *Fowler v. Wells Fargo Bank, N.A.*, No. 18-cv-01254-MMC, 2019 WL 1369934, at *2 n.2 (N.D. Cal. Mar. 26, 2019) ("[N]egligent misrepresentation is a species of fraud, and, as such, is subject to Rule 9(b)."); *Carter v.*

---

[47] *Id.* at 20.

1   *Rasier-CA, LLC*, No. 17-cv-00003-HSG, 2017 WL 4098858, at *4 (N.D. Cal. Sept. 15, 2017)

2   (both negligent and intentional misrepresentation claims sound in fraud and must satisfy Rule

3   9(b)), *aff'd*, 724 F. App'x 586 (9th Cir. 2018).

4       Under Rule 9(b), a party "alleging fraud or mistake . . . must state with particularity the

5   circumstances constituting fraud or mistake." "To satisfy Rule 9(b)'s particularity requirement, the

6   complaint must include an account of the time, place, and specific content of the false

7   representations[,] as well as the identities of the parties to the misrepresentations." *Depot, Inc. v.*

8   *Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019). Particularity requires "the who,

9   what, when, where, and how of the misconduct charged, including what is false or misleading

10  about a statement, and why it is false." *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th

11  Cir. 2021) (cleaned up).

12      Here, the plaintiff's three fraud claims incorporate the plaintiff's factual allegations and then

13  allege that the defendant and "Mr. Karon," the plaintiff's supervisor, made a false promise or

14  representation to the plaintiff. The complaint does not specify what specific misrepresentations

15  were made or, for that matter, the when, where, or how of the alleged deceit.[48] In her opposition,

16  the plaintiff clarifies that she is asserting that Al Jazeera and Mr. Karon falsely represented that

17  she would be promoted and that management would correct systemic gender discrimination at the

18  company.[49] But these unpled assertions do not suffice.

19      Furthermore, the plaintiff's assertion that the defendant lied to her about her promotion is

20  somewhat inconsistent with the allegations in her complaint. According to the complaint, the

21  defendant was going to promote her until Mr. Ahmad (the "Head of [Al Jazeera International]

22  English") retaliated against the plaintiff for raising gender-discrimination issues during the

23  January 2020 management training. The defendant told her that her promotion had been approved

24  in October 2019, added her to the Al Jazeera management-messaging group in December 2019,

[48] Compl. – ECF No. 1-2 at 29–30 (¶¶ 171, 179, 187).
[49] Opp'n – ECF No. 21 at 14–18.

United States District Court / Northern District of California

and sent her to management training in January 2020.[50] Put differently, the plaintiff's allegations suggest that the defendant's management may have changed their mind for unlawful reasons (*i.e.*, retaliation), but not that they ever knowingly lied about her promotion.

The plaintiff cannot rely on unpled facts to avoid dismissal. The court dismisses the fraud claims with leave to amend.

## CONCLUSION

The court grants the defendant's motion in part and dismisses claims seven through ten (the fraud claims and the claim for intentional infliction of emotional distress) without prejudice. The court denies the request to dismiss the constructive-termination claim. The plaintiff may file an amended complaint within twenty-eight days and must attach as an exhibit a blackline of any amended complaint against the original complaint. This resolves ECF No. 9.

**IT IS SO ORDERED.**

Dated: November 14, 2022

_____
LAUREL BEELER
United States Magistrate Judge

United States District Court
Northern District of California

---

[50] Compl. – ECF No. 1-2 at 13–14 (¶¶ 60, 62, 65, 68).